**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **FEDERAL TRADE COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **10 C 6123** |
| | ) | |
| **AMERICAN TAX RELIEF LLC,** | ) | |
| **ALEXANDER SEUNG HAHN,** | ) | **Judge Ronald A. Guzmán** |
| **JOO HYUN PARK, YOUNG SOON PARK,** | ) | |
| **and IL KON PARK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

The Federal Trade Commission ("FTC") has sued defendants American Tax Relief LLC, Alexander Seung Hahn, Joo Hyun Park, Young Soon Park and Il Kon Park for violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a). Before the Court is defendants' motion to transfer venue. For the reasons provided herein, the Court grants the motion.

## Facts

Defendant American Tax Relief LLC ("ATR") is a California limited liability company with its principal place of business in Beverly Hills, California. (Compl. ¶ 6.) Defendants Alexander Seung Hahn and his wife, Joo Hyun Park, reside in California and are officers, directors and/or owners of ATR, who controlled and participated in the acts and practices of ATR. (*Id.* ¶¶ 7-8.) Defendants Young Soon Park (also known as Young S. Son) and Il Kon Park, both residents of California, are the mother and father of Joo Hyun Park and received funds or other property that can be traced directly to defendants' deceptive and unfair practices. (*Id.* ¶¶ 9-10.) Thus, all defendants reside in the Central District of California. The receiver appointed

by the Court, Thomas Seaman, also resides in the Central District of California and is represented by attorneys located in that district, as well as local counsel located in the Northern District of Illinois.

The FTC's complaint alleges the following. Since October 1999, defendants have induced consumers to pay exorbitant fees for defendants' supposed tax relief services by making false claims and material misrepresentations to consumers about whether consumers qualify for particular tax relief programs and about defendants' abilities to reduce their tax debts significantly. (*Id.* ¶ 12.) Defendants advertised, offered for sale and sold their services to prospective purchasers throughout the United States using television, radio, direct mail, internet and Yellow Page advertisements. (*Id.* ¶ 13.) Defendants claim that they have helped thousands of consumers settle their delinquent tax debts with the Internal Revenue Service ("IRS"). (*Id.* ¶ 15.)

When consumers called defendants' toll-free numbers, they provided defendants' representatives with information such as their tax debts, and sometimes their income, assets and liabilities. (*Id.* ¶ 20.) Defendants' representatives told nearly all of the consumers who called that they qualified for tax relief services, including in some cases an "Offer in Compromise" that would settle their tax debt or a "Penalty Abatement" that would reduce their tax debt and allegedly remove penalties and interest. (*Id.*) In many cases, defendants' representatives told consumers that, by hiring defendants, their tax debts would be reduced by fifty percent or more. (*Id.*)

Defendants required consumers to give them their fax number and make payments over the phone, either through charges to their credit card or debits from the bank accounts, ranging

from approximately $3,200.00 to $25,000.00 or more per consumer, which supposedly was for all services from start to finish. (*Id.* ¶ 21.) Defendants then faxed paying consumers two IRS forms, a Power of Attorney, a Declaration of Representative form (Form 2848) and a Tax Information Authorization form (Form 8821), to be filled out and returned to defendants. (*Id.* ¶ 22.)

Approximately four days after defendants sent the fax, they sent consumers two letters and some questionnaires. (*Id.* ¶ 23.) The first letter thanked the consumer for becoming a client, acknowledged payment and instructed the consumer to fill out the questionnaires. (*Id.*) The second letter appeared to be a receipt of the consumer's initial payment, a notification of any balance due and statement of defendants' cancellation policy in small print:

> If you decide to cancel our services, you have 5 days from the date of this letter to notify us in writing. You will be refunded up to 50% of the fee only if the fee is paid in full. This pays for the preliminary work and advice you have already received. The finalized work will not be sent to you until the fee is paid in full.

(*Id.*) That was the first time consumers were notified of defendants' cancellation policy, most consumers did not notice this statement, and often this cancellation period was about to expire, or already had expired, by the time consumers received notice of the policy. (*Id.*)

Consumers who paid for defendants' services did not receive the promised services or results. (*Id.* ¶ 24.) Defendants provided consumers with a series of excuses as to why they had not made progress in reducing consumers' tax liabilities or blamed consumers for defendants' lack of progress based on consumers' failure to: (1) provide paperwork or information necessary to settle their tax debts, (2) pay the balance owed or (3) provide truthful information to defendants about the extent of their tax liabilities or other information during their initial consultations with defendants' representatives. (*Id.*)

Defendants also demanded additional money from some consumers purportedly to enable them to continue working on their cases. (*Id.* ¶ 25.) Defendants claimed that they needed more money because the Powers of Attorney supposedly expired or because the consumers were somehow at fault. (*Id.*) In some instances, defendants charged consumers' credit cards or withdrew money from their bank accounts in amounts more than that initially authorized by the consumer. (*Id.* ¶ 26.)

In reality, very few of defendants' clients qualified for Offers in Compromise, Penalty Abatements or substantial reductions in their tax debts, which is contrary to what defendants promised them. (*Id.* ¶ 27.) Instead, the majority of defendants' clients qualified, at most, for installment agreements, which requires consumers to pay the full amount of their tax debts, but in smaller monthly payments until their entire tax debt is satisfied. (*Id.* ¶ 28.) Installment agreements are generally easy for consumers to arrange for themselves. (*Id.*)

The FTC filed this lawsuit, and the Court granted the FTC's motions for a temporary restraining order and a preliminary injunction. The Court appointed Thomas Seaman, who is located in the Central District of California, as receiver to operate and wind down ATR's business.

## Discussion

As an initial matter, the FTC suggests that this motion is untimely. The Court disagrees and holds that defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a) was timely filed. The statute provides no time limit for moving to transfer and courts have merely held that a party should act with reasonable promptness. *Prokop v. Stonemor Partners LP*, No. 09 C 4323, 2009

WL 3764103, at *2 (N.D. Ill. Nov. 9, 2009); *Black & Decker (U.S.), Inc. v. Sunbeam Corp.*, No. 93 C 4695, 1994 WL 865386, at *2 (N.D. Ill. Feb. 2, 1994); *see Blumenthal v. Mgmt. Assistance, Inc.*, 480 F. Supp. 470, 471 (N.D. Ill. 1979) (holding that three-year delay in filing motion to transfer does not prevent court from reaching its merits). Defendants filed the instant motion approximately 120 days after the complaint was filed. The case had not progressed significantly at that point, other than the entry of the preliminary injunction and asset freeze order, as well as various motions for legal fees and expenses by the defense counsel and the receiver. Although the FTC argues that defendants, at one point, were willing to concede to proceed before the magistrate judge, this does not indicate that defendants would not have also brought the instant motion before the magistrate judge. *See Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 917 (N.D. Ill. 2009) ("However, a defendant does not waive the right to request a transfer of venue under 28 U.S.C. § 1404(a) by consenting to the jurisdiction of a magistrate judge to decide the case.") Given the time frame in which this motion was filed, the Court finds that defendants proceeded in a timely fashion. Moreover, any delay did not unduly prejudice the FTC or increase the expense of litigation.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." § 1404(a). Thus, a transfer is appropriate when "(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice." *United Airlines, Inc. v. Mesa Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998); *see Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). The movant has the burden

of showing, "by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).  Courts are given broad discretion to transfer under § 1404(a), *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 264-65 (1981), and are called upon to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness," *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29-31 (1988) (quotation omitted).  Thus, district courts look at each statutory factor on a case-by-case basis and utilize a broader set of considerations that turn upon the particular facts of the case.  *Coffey*, 796 F.2d at 219.

The first two factors – convenience of parties and witnesses – are divided into numerous "private interest" factors.  *Omnisource Corp. v. Sims Bros, Inc.,* No. 1:08-CV-89, 2008 WL 2756345, at *3 (N.D. Ind. July 14, 2008).  Additionally, the interests of justice are broken into a variety of "public interest" considerations.  *Id.* at *4.  The public interests are a separate analysis and may be determinative in a particular case, even if the parties and witnesses factors might call for a different result.  *Coffey,* 796 F.2d at 220.

### A.      Venue is Proper in the Transferor and Transferee Courts

Neither party argues that this venue is improper under 28 U.S.C. § 1391(a).  There being no dispute as to this issue, the Court finds that venue is proper here.

Pursuant to § 1391(a), jurisdiction is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."   Because California is where all of the decisions regarding the false advertising and a substantial part of the false advertising itself occurred (between 1999 and 2010, due to its advertising efforts, ATR had 564 customers in

Illinois whereas it had 3,116 customers in California, *see* Def.'s Ex., Kreindler Aff. ¶ 6), venue is proper in the transferee court.

## B.    Private Interests

To weigh the private interests in a motion to transfer, courts consider a number of factors, including:  "(1) plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to the sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses."  *See First Nat'l Bank v. El Camino Res., Ltd.,* 447 F. Supp. 2d 902, 911-12 (N.D. Ill. 2006).

Deference is given to the plaintiff's choice of forum, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) (quotation omitted).  However, the choice is entitled less deference when the forum is not the site of material events causing the alleged breach.  *See First Nat'l Bank,* 447 F. Supp. 2d at 912; *Pansophic Sys., Inc. v. Graphic Computer Serv., Inc.,* 736 F. Supp. 878, 880-81 (N.D. Ill. 1990).  If another site has a stronger connection to the material events or relationship to the suit, less deference is awarded to plaintiff's choice of forum.  *Chi., Rock Island & Pac. R.R. Co. v. Igoe,* 220 F.2d 299, 304 (7th Cir. 1955).

Thus, the weight that would be given to the FTC's choice of forum may be diminished by the case's significant connection with California.  Hence, the Court will discuss the second factor – the situs of material events – before determining the weight to be afforded the FTC's choice of forum.

In a deceptive advertising case, the situs of material events is where the alleged acts or omissions giving rise to the deceptive advertising claim occurred. *Porritt v. MacLean Power Sys., L.P.,* No. 10-519-DRH, 2010 WL 37880970, at *3 (S.D. Ill. Sept. 22, 2010). Deceptive advertising cases focus on the activities of the alleged wrongdoer, its employees and its documents. *See id.* at *3.

The FTC argues that because ATR advertised in all fifty states, the situs of material events could be considered as occurring anywhere, including Illinois. Defendants argue that ATR's principal place of business was in the Central District of California, all of its officers, owners, directors and sales representatives reside there and all of the corporate decisions regarding sales and advertising occurred there. FTC has not refuted defendants' evidence that most, if not all, of such decisions were made in California. Further, ATR had over five times the number of customers in California than Illinois, which means that ATR clearly advertised either more effectively or heavily in California.

The Court agrees with ATR that California is mainly where the acts or omissions giving rise to the deceptive advertising claim occurred. Therefore, this factor weighs in favor of transfer. Because the evidence illustrates that Illinois has a much weaker connection to the suit than California, the FTC's choice of forum is accorded less deference.

Next, the relative ease and access to the sources of proof is a neutral factor. An assertion that most of the documentary evidence exists in one location, in and of itself, is insufficient to tip the balance in favor of transfer to that location. *Annett Holdings v. Certain Underwriters at Lloyds*, No. 08 C 1106, 2008 WL 2415299, at *2 (N.D. Ill. June 12, 2008); *see Stock v. Integrated Health Plan, Inc.*, No. 06-CV-00215-DRH, 2006 WL 3420289, at *3 (S.D. Ill. Nov.

28, 2006). Moreover, documentary evidence is readily transferable and transporting it generally does not pose a high burden upon either party. *First Nat'l Bank*, 447 F. Supp. 2d at 912; *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 836 (N.D. Ill. 2004).

Defendants argue that virtually all of the documents relevant to the issues in this case are in California and, therefore, access to these documents will be easier if this case is litigated there. The FTC argues that most information is stored in computer databases, which can be transported and accessed anywhere. The FTC also argues that there is a substantial number of documents in the possession of third parties across the United States, including Illinois. Because any document or database necessary to the case may be easily shipped from one state to another, the Court holds that this factor weighs neither for nor against transfer.

Next, when analyzing the convenience of the parties, a court considers "their respective residences and abilities to bear the expense of trial in a particular forum." *Von Holdt v. Husky Injection Molding Sys. Ltd.,* 887 F. Supp. 185, 188 (N.D. Ill. 1995). For this factor to weigh in favor of a transfer, the movant must be show that the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff. *Emhart Indus., Inc. v. Universal Instruments Corp.*, No. 88 C 4960, 1988 WL 121538, at *2 (N.D. Ill. Nov. 4, 1988).

The FTC argues that litigating in the Central District of California is less convenient for the FTC because, although the FTC has an office and a staff of attorneys in that district, the FTC has assigned the case to its larger Chicago office, which will continue to litigate the matter regardless of whether it is transferred to California. However, "convenience and location of counsel has never been accorded weight in a transfer analysis." *Hemstreet v. Scan-Optics, Inc.*,

No. 89 C 5937, 1990 WL 36703, at *4 (N.D. Ill. Mar. 9, 1990); *see Simes v. Jackson Nat'l Life Ins. Co.*, 2005 WL 2371969, at *3 (N.D. Ill. Sept. 22, 2005); *see also FTC v. Mazzoni & Sons, Inc.*, No. 106-CV-2385, 2006 WL 3716808, at *2 (N.D. Ohio Dec. 14, 2006) ("It is therefore of little consequence that the FTC's lawyers will have to travel a little over two hours to Detroit (just as Defendants' lawyers would have to travel to Cleveland).").

Defendants argue that they all reside in California, ATR's principal place of business is in California and the receiver who has stepped into the shoes of ATR is located California. Thus, litigating in Chicago, and requiring the receiver to travel to Chicago to report on his various activities, raises the cost of litigation for defendants, a cost that further depletes defendants' assets that should, instead, go to the victims of the alleged false advertising. Given all of the considerations regarding the convenience of the parties, the Court finds that this factor weighs in favor of transfer.

The next factor, the convenience of witnesses, is generally viewed as the most important factor when considering a transfer of venue. *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998). The convenience of non-party witnesses is "substantially more important than the convenience of party witnesses because the latter are within the party's control." *First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.,* No. 04 C 2728, 2004 WL 1921059, at *4 (N.D. Ill. July 21, 2004). Hence, non-party witnesses are more crucial to the analysis because they are not assumed to appear in court voluntarily. *Spherion Corp. v. Cincinnati Fin. Corp.,* 183 F. Supp. 2d 1052, 1059 (N.D. Ill. 2002); *Hyatt Corp. v. Personal Comm'ns Indus. Ass'n*, No. 04 C 4656, 2004 WL 2931288, at *3 (N.D. Ill. Dec. 15, 2004). "In assessing this factor, the number of witnesses located in each forum and the importance of each witness' testimony must

be considered." *First Nat'l Bank*, 447 F. Supp. 2d at 913; *see Hinc v. Lime-O-Sol Co.*, 231 F. Supp. 2d 795, 796 (N.D. Ill. 2002) ("It is preferable to hold a trial in the forum that will necessitate less travel for witnesses.").

The FTC argues that many of the advertisers who produced or purchased media for defendants' advertisements are located closer to Illinois than California.[1]  One of ATR's radio, newspaper and Yellow Page media buyers is located in Chicago, Illinois.  (Pl.'s Resp. Br., Ex. A, Collins Decl. ¶ 2.)  Another of ATR's radio and television media buyers is located in Stamford, Connecticut. (*Id.*, Ex. C, Tatosian Decl. ¶ 2. )  ATR's per-inquiry advertising radio and television media buyer is located in Jacksonville, Florida.  (*Id.*, Ex. D, Sopchak Decl. ¶ 2.)  ATR's television advertisement producer is located in New York, New York.  (*Id.*, Ex. B, Karlin Decl. ¶ 2.)   In addition, the FTC has issued subpoenas for  documents to nine other advertising agencies located in Arizona, Florida, Minnesota, New York, Rhode Island, Tennessee and Texas (as well as five such agencies located in California).  It is unclear whether each and every one of the custodians of the records of these nine agencies will be required to be witnesses or whether the parties would stipulate with regard to the foundation for the business records exception in order to admit these records into evidence.  Assuming that no stipulation is reached, however, these thirteen non-party witnesses will be inconvenienced by having to travel farther if venue were transferred to the Central District of California.

On the other hand, defendants argue that of the forty-four declarations submitted to date in this litigation (excluding the above four declarations that the FTC provided in response to the

_____

[1]Although defendants object to portions of these declarations, the Court strikes the objections as moot for purposes of the motion to transfer because the Court has not relied on the portions of the declarations to which defendants object.

motion to transfer), only five have a connection to Illinois and only three are non-party

witnesses, who are consumers, located in Illinois. Of the remaining thirty-nine declarations,

eighteen are from non-expert, non-party witnesses located in California: the Receiver and his

director, who were selected by the FTC (Seaman and Gordon), six consumers (Hertzog, Madson,

McCall, Shoham, Wales and Warda), six former ATR employees (Barton, Barraza, Brandon,

Bachtle, Garcia and Byrd) and four other non-party witnesses proffered by the FTC (Almond,

Yoss, Kaufman and Kalafatis). Even if the Court assumes, as does the FTC, that only two

former ATR employees located in California are willing to testify at trial, defendants have

successfully established that a more significant number of witnesses who will provide a great

bulk of the testimony regarding ATR's business, clients, sales tactics and practices are located in

California and therefore will necessitate less travel if the venue is transferred to the Central

District of California. Because it is abundantly clear that most of the non-party witnesses

specified thus far reside in California, this factor weighs heavily in favor of transfer.


### A.        Public Interests

Interests of justice include the court's familiarity with the applicable law, the speed at

which the case will proceed to trial and the desirability of resolving controversies in their locale.

*First Nat'l Bank,* 447 F. Supp. 2d at 912; *Medi USA v. Jobst Inst., Inc.,* 791 F. Supp. 208, 210

(N.D. Ill. 1992). "In determining whether a motion under § 1404(a) should be granted, the court

must seek to promote the efficient administration of justice and not merely the private interests

of the parties." *Hanley,* 6 F. Supp. 2d at 774. "Transfer rulings under 28 U.S.C. § 1404(a)

generally turn on practical considerations, including judicial economy (whether transfer will

avoid duplicative litigation, effect judicial economy and prevent waste of time and money).”
*Dorado v. Laborers Pension Trust Fund for N. Cal.*, No. CV F 06-0394 AWI LJO, 2006 WL
2402006, at *2 (E.D. Cal. Aug. 18, 2006) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 616
(1964)).

### 1.      Applicable Law

The applicable law in this case is the Federal Trade Commission Act.  Where a case is
based on federal law, “a judge in a particular district has no inherent advantage over [a] judge in
other districts.”  *SEC v. Kasirer*, No. 04 C 4340, 2005 WL 645246, at *3 (N.D. Ill. Mar. 21,
2005).  Accordingly, this factor weighs neither in favor nor against transfer.

### 2.      Expediency to Trial and Congestion of the Docket

The efficient administration of the court system is a factor included within the interests of
justice.  *Coffey*, 796 F.2d at 221.  Judicial expediency and justice “may be served by a transfer to
a district where the litigants are more likely to receive a speedy trial.”  *Id.*  “[T]he two most
relevant statistics are:  (1) the median months from filing to disposition for civil cases and (2) the
median months from filing to trial in civil cases.”  *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899,
904 (N.D. Ill. 2001).

The FTC argues that transferring venue to the Central District of California would force
another court to educate itself on the facts of the case, waste resources and delay the
proceedings.  The Court disagrees.  Contrary to the FTC’s arguments otherwise, this is not that
complicated of a case and another court will not have any difficulty getting up to speed.  The

facts of this case are relatively straightforward and the fact that a receiver is involved and assets have been frozen does not create any hurdle to either the transferee court's understanding of the case or ruling on any pending motions. Further, the Court does not find that defendants have dragged their feet with regard to, or suspiciously timed, their motion to transfer.

Defendants argue, and the FTC does not dispute, that cases proceed to trial faster in the Central District of California than they do in the Northern District of Illinois: around nine months faster according to the 2009 Federal Court Management Statistics, the most recent version available. (Def.'s Ex., Kreindler Decl. ¶ 7, Ex. A, Federal Court Management Statistics, 2009, *available at* http://www.uscourts.gov/viewer.aspx?doc=cgi-bin/cmsd2009.pl.) The median time from filing to disposition for civil cases is only slightly faster in the Central District of California.

### 3. Interest in Resolving the Controversy in Their Locale

"Resolving litigated controversies in their locale is a desirable goal of the federal courts." *First Nat'l Bank*, 447 F. Supp. 2d at 914 (quotation omitted). In this case, both Illinois and California have legitimate interests in redressing grievances by their residents regarding defendants' alleged false advertising. Because the false advertising occurred in both Illinois and California, the interest of each state regarding the outcome of the litigation does not favor either forum.

Nonetheless, California appears to have a stronger relationship to the issues in the litigation. Not only were there over five times as many consumers subjected to the alleged fraudulent business practices in California than Illinois, but also California has a greater interest

14

in the litigation because ATR is a California company, all of ATR's employees were California residents and most if not all of the business decisions, correspondence with clients, analysis of clients' financial information and collection of payments that form the basis of the purported fraud allegations occurred in California.

In sum, after carefully addressing and reviewing each of the private and public interest factors, the Court finds that the Central District of California is the most appropriate forum for the convenience of the parties, witnesses and the interests of justice. Accordingly, the Court transfers this case to the Central District of California.


## Conclusion

For the reasons provided in this opinion, the Court grants the motion to transfer venue to the Central District of California [doc. no. 104]. The Court hereby orders the Clerk of the Court to transfer this case to that venue. All other motions will be addressed by the transferee court.

SO ORDERED.                                ENTERED:  July 20, 2011

_____

**HON. RONALD A. GUZMAN**

**United States District Judge**